UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


JAMES E. SCHUESSLER,                          09-CV-3065-BR

            Plaintiff,                        OPINION AND ORDER


       v.


MICHAEL J. ASTRUE, Commissioner
of Social Security,

            Defendant.


ROBERT F. WEBBER
Black, Chapman, Webber,
Stevens, Peterson, & Lundblade
221 Stewart Avenue, Suite 209
Medford, OR 97501
(541) 772-9850

            Attorneys for Plaintiff


PAGE 1 - OPINION AND ORDER

**DWIGHT C. HOLTON**
United States Attorney
**RICHARD A. MORRIS**
Special Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204
(503) 727-1003

       Attorneys for Defendant

**BROWN, Judge.**

     Plaintiff James E. Schuessler seeks judicial review of a
final decision of the Commissioner of the Social Security
Administration denying his application for Disability Insurance
Benefits (DIB) under Title II of the Social Security Act.  This
court has jurisdiction pursuant to 42 U.S.C. §§ 405(g).

     For the following reasons, the Court **AFFIRMS** the
Commissioner's decision and **DISMISSES** this matter.

## ADMINISTRATIVE HISTORY

     Plaintiff filed an application for DIB on May 4, 2001,
alleging a disability onset date of February 20, 2001.  Tr. 22,
34.[1]  The Social Security Administration (SSA) denied the
application on September 24, 2001.  Tr. 40.  Plaintiff timely

---

     [1]"Tr." refers to the certified copy of the Transcript of
Administrative Record submitted by Defendant on December 1, 2009,
pursuant to 42 U.S.C. § 405(g).  On December 3, 2009, Defendant
filed a Supplemental Transcript of Social Security Administrative
Record containing "a true and accurate copy of Page 34, which was
inadvertently omitted from the record in this case." *See* Supp.
Tr. of Soc. Sec. Admin. R. at 1.

PAGE 2 - OPINION AND ORDER

filed a Request for Reconsideration.  Tr. 45, 47.  On
February 19, 2002, SSA denied Plaintiff's Request for Recon-
sideration.  Plaintiff subsequently filed a Request for Hearing
by an Administrative Law Judge (ALJ) on March 6, 2002.  Tr. 50.

On January 13, 2004, Plaintiff testified at a hearing before
the ALJ.  Tr. 845-86.  A vocational expert (VE) also testified at
the hearing.  Tr. 845, 876-86.  On March 19, 2004, the ALJ issued
a decision in which he concluded Plaintiff is not disabled under
the Social Security Act and retains the residual functional
capacity (RFC) to perform past relevant work.  Tr. 793-806.

Plaintiff timely submitted a Request for Review of the
hearing decision.  Tr. 810-12. On November 3, 2006, the Appeals
Council granted Plaintiff's Request for Review; vacated the ALJ's
March 19, 2004 decision; and remanded the case to the ALJ with
specific instructions to (1) perform a function-by-function
assessment of Plaintiff's maximum RFC with specific references to
evidence in the record to support the assessed limitations and
(2) compare Plaintiff's RFC with the mental and physical demands
of his past relevant work.  Tr. 807-09.

On June 13, 2007, the ALJ held a hearing on remand.  Tr. 22,
887-908.  Plaintiff and a VE testified at the hearing.  Tr. 887-
908.  On August 31, 2007, the ALJ issued a second decision in
which he found Plaintiff retained the ability to perform past
relevant work and was not disabled as defined by the Social

PAGE 3 - OPINION AND ORDER

Security Act at any time from February 20, 2001, the alleged
onset date, through June 30, 2006, the date last insured.
Tr. 33-34.  Accordingly, the ALJ denied Plaintiff's claim for
DIB.  Tr. 19-34.

The ALJ's August 31, 2007 decision became the Commissioner's
final decision when the Appeals Council denied Plaintiff's
request for review on May 28, 2009.  Tr. 8-11.  *See also* 20
C.F.R. §§ 404.981; *Russell v. Bowen*, 856 F.2d 81, 83-84 (9th Cir.
1988).


## FACTUAL BACKGROUND

Plaintiff was born in 1941.  Tr. 38.  He has a high-school
diploma and an aircraft and power-plants license obtained through
vocational school.  Tr. 898.  Plaintiff has past relevant work
experience assembling wire harnesses for aircraft radios and
navigation equipment and as a flight line mechanic, carpenter,
and groundskeeper.  Tr. 32-33, 56.  He served in the United
States Navy as an aviation structure mechanic between 1960 and
1964 and as an aviation electrician between 1968 and 1977.  Tr.
130.

Plaintiff alleges he has been unable to work since
February 20, 2001, due to cardiac disease including congenital
valvular heart disease (*i.e.*, Marfan's Syndrome), related cardiac
conditions related to post-aortic and mitral valve replacements,

PAGE 4 - OPINION AND ORDER

sleep apnea, degenerative joint disease, degenerative disk
disease, hypertension, musculoskeletal disorder of the knees,
asthma and allergies, coccidioidomycosis, hearing loss, tremors,
vision problems, migraine headaches, fatigue, depression,
anxiety, and somatization.  Tr. 24-26, 55.  Plaintiff was fifty-
nine years old at the time of his alleged disability onset date,
and sixty-five years old as of his date last insured.  Tr. 24,
65.


### STANDARDS

The initial burden of proof rests on the claimant to
establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004
(9th Cir. 2005).  To meet this burden, a claimant must
demonstrate his inability "to engage in any substantial gainful
activity by reason of any medically determinable physical or
mental impairment which . . . has lasted or can be expected to
last for a continuous period of not less than 12 months."
42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of
developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841
(9th Cir. 2001).

The district court must affirm the Commissioner's decision
if it is based on proper legal standards and the findings are
supported by substantial evidence in the record as a whole.
42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec.*

PAGE 5 - OPINION AND ORDER

*Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Robbins,* 466 F.3d at 882.  The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation. *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005).  The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).


## DISABILITY ANALYSIS

### I.    The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. §§ 404.1520.  Each step is potentially

dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). *See also* 20 C.F.R. §§ 404.1520(a)(4)(I).

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1520(a)(4)(iii). The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1520(e). *See also* Social Security Ruling (SSR) 96-8p. A

PAGE 7 - OPINION AND ORDER

'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996). The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments. An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'" SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1520(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1520(a)(4)(v). Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations

at 20 C.F.R. part 404, subpart P, appendix 2.  If the
Commissioner meets this burden, the claimant is not disabled.  20
C.F.R. §§ 404.1520(g)(1).


### ALJ'S FINDINGS

At Step One of the disability evaluation, the ALJ found
Plaintiff had not engaged in substantial gainful activity from
his alleged disability onset date, February 20, 2001, through his
date last insured, June 30, 2006.  Tr. 24.

At Step Two, the ALJ determined Plaintiff had "the following
severe combination of impairments:  cardiac disease including
congenital valvular heart disease, termed Marfan's syndrome or
disorder, status post aortic valve replacement in 1989 and mitral
valve replacement in 1991; as well as sleep apnea."  Tr. 24.  The
ALJ concluded, however, that Plaintiff's alleged arthritis in his
knees, back pain, depression, respiratory chemical sensitivity,
tremors, edema, degraded vision, and headaches were nonsevere
impairments.  Tr. 24-26.  The ALJ found these impairments are not
supported by objective medical evidence in the record.  Tr. 24-
26.

At Step Three, the ALJ found Plaintiff did not have an
impairment or combination of impairments that met or equaled one
of the listed impairments in 20 C.F.R. Part 404, Subpart P,
Appendix 1.  Tr. 26.  The ALJ concluded "the record shows no

treating or examining physician has reported findings similar in
severity to the description provided for any impairment" listed
in Section 1.00 of Appendix 1, 20 C.F.R. Part 404, Subpart P.
Tr. 23.

The ALJ then assessed Plaintiff's RFC. Tr. 26-32. The ALJ
determined through the date last insured that Plaintiff had "the
residual functional capacity over a period of eight hours to
perform a wide range of light exertional work because of has
cardiac and sleep apnea conditions." Tr. 26. The ALJ also found
Plaintiff "is able to lift 10 pounds frequently and 20 pounds
occasionally with sitting, standing and walking each six" in an
eight-hour day; has "unlimited pushing or pulling capacity, other
than as shown for lifting and/or carrying"; can "occasionally
climb ramps/stairs, ladder/rope/scaffolds; can "occasionally
kneel"; and can "frequently balance, stoop, crouch and crawl."
Tr. 26. The ALJ also found Plaintiff has "no manipulative,
visual or communicative limitations" and "no environmental
limitations except for avoidance of even moderate exposure to
hazards where bleeding is problematic if injured." Tr. 26.

The ALJ concluded Plaintiff's testimony concerning the
intensity, persistence, and limiting effects of his impairments
was not entirely credible because the objective medical evidence
did not support Plaintiff's complaints. Tr. 30-32. The ALJ also
noted Plaintiff's complaints were undermined by his failure to

follow medical advice, his exaggerated and inconsistent statements regarding symptoms, and inconsistencies between his daily activities and his reported limitations.  Tr. 30-32.

At Steps Four and Five, the ALJ relied on the testimony of the VE and concluded Plaintiff was capable of performing past relevant work as a wire harness assembler as that job is actually and generally performed.  Tr. 32.  The ALJ also found Plaintiff was capable of performing past relevant work as a flight line mechanic as actually performed.  Tr. 32-33.  Accordingly, the ALJ concluded Plaintiff was not disabled from February 20, 2001, his alleged onset date, through June 30, 2006, the date last insured. Tr. 33.


## DISCUSSION

Plaintiff argues the ALJ erred by (1) failing to give proper weight to the United States Department of Veterans Affairs' disability determination; (2) improperly discounting Plaintiff's credibility; (3) rejecting or failing to consider the medical opinions of Plaintiff's treating or examining physicians; (4) failing to consider the combined effects of Plaintiff's impairments and whether those impairments medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) improperly relying on the VE's answers to an incomplete hypothetical that failed to accurately reflect Plaintiff's

PAGE 11 - OPINION AND ORDER

limitations; and (6) failing to comply with the Appeals Council's November 2006 Remand Order.

## I. Rejection of the Department of Veterans Affairs Disability Determination

Plaintiff argues the ALJ failed to give proper weight to the United States Department of Veterans Affairs' (VA) finding that Plaintiff was totally disabled as of August 1999 due to Marfan's Syndrome.  Tr. 127-28.  The VA's finding was based, in part, on the medical reports of Ben Prins, M.D., who examined Plaintiff for his heart condition on June 9, 2003, and Robert C. Gerber, M.D., who examined Plaintiff for his respiratory conditions on May 5, 2003.  Tr. 446-51.  Both physicians interviewed and examined Plaintiff, conducted reviews of his medical history, and concluded Plaintiff suffered from Marfan's Syndrome.  Tr. 446-51.

The ALJ found the VA's 100% disability determination had "little meaning" in determining Plaintiff's disability status for Social Security purposes because (1) Plaintiff made "material misrepresentation[s]" about his recent work history to Drs. Prins and Gerber; (2) Dr. Prins, the VA's examining physician, "accepted at face value" Plaintiff's "less than credible self report" that he could only walk for a short period; and (3) Dr. Prins's report is inconsistent with the statement of Robert Wilden, M.D., who conducted a medical genetics consultation and concluded Plaintiff probably had a mild case of Marfan's Syndrome.  Tr. 26-27.

PAGE 12 - OPINION AND ORDER

In *McCartey v. Massanari* the Ninth Circuit held the ALJ "must ordinarily give great weight to a VA determination of disability." 298 F.3d 1072, 1076 (9th Cir. 2002). The Ninth Circuit highlighted the "marked similarity" between the Social Security and VA disability programs; *i.e.,* the programs serve the "same governmental purpose" and have similar regulatory schemes and evaluation criteria. *Id.* "Because the VA and SSA criteria for determining disability are not identical, however, the ALJ may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." *Id.* (citing *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001)(ALJ need not give great weight to a VA rating if he "adequately explain[s] the valid reasons for not doing so.").

Here the ALJ provided specific, persuasive, and valid reasons supported by the record for rejecting the VA's disability determination. The ALJ found Plaintiff made material misrepresentations to the VA's examining physicians regarding his recent employment history. Tr. 27. As the ALJ noted, Plaintiff told Dr. Prins that he "took an early retirement because of fatigue" in 1998, and he "falsely told Dr. Gerber that he had last worked in 1997, for a three-week trial." Tr. 27, 447, 449. In fact, Plaintiff worked in various capacities, including wire harness assembler, through February 2001. Tr. 77, 125.

Plaintiff earned $37,132 in 1998, $10,860 in 1999, and $20,575 in 2001.  As the ALJ noted, this undisclosed work activity may have impacted the VA evaluators' opinions that Plaintiff was totally disabled as of 1999.  Tr. 27.

The ALJ also rejected the VA's disability determination because Dr. Prins "accepted at face value" Plaintiff's "less than credible self report" that he could walk for only 150 feet and could not make it up a gradual hill.  Tr. 27, 447.  The ALJ noted this claim was inconsistent with the records of Plaintiff's treating cardiologist, Bradley Personius, M.D., which showed during a 2001 treadmill stress test that Plaintiff had an "average exercise capacity."  Tr. 27, 262.  The ALJ ultimately found Plaintiff was not fully credible based, in part, on discrepancies between his alleged inability to work and his activities of daily living as well as exaggerations of the severity of his symptoms.  Tr. 27, 30-31.  Plaintiff does not contest those specific credibility findings.

An ALJ may reject a physician's opinions that is predicated on reports of a claimant who has been found to be not credible. *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009).  *See also Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  Accordingly, the ALJ's finding that the VA's disability determination was based on Plaintiff's exaggerated, self-reported limitations is specific, persuasive, and based on

substantial evidence in the record. *See McCartey*, 298 F.3d at
1076. Although some of Dr. Personius's later reports could be
interpreted to support Plaintiff's alleged limitations, that does
not provide a sufficient basis for disturbing the ALJ's finding
that the VA's disability determination was based, in part, on
Plaintiff's less than credible self-report. *See Burch*, 400 F.3d
at 679 (Commissioner's decision must be upheld even if the
evidence could result in "more than one rational
interpretation").

Finally, the ALJ rejected the VA's disability determination
because "Dr. Prins inconsistently called attention to a statement
by Robert Wilden, M.D., a medical geneticist, who opined that
[Plaintiff] probably had a mild case of Marfan's syndrome, as he
did not meet all related criteria for such a syndrome." Tr. 27,
447-48. Dr. Prins did not attempt to reconcile his opinion that
Plaintiff was totally disabled from Marfan's Syndrome with the
contrary opinion of a genetic specialist that Plaintiff only had
a "mild case of Marfan's syndrome." Tr. 447-48.

The ALJ is the "final arbiter with respect to resolving
ambiguities in the record." *Tommasetti*, 533 F.3d at 1041. Here
the ALJ was justified in rejecting the VA's disability
determination, in part, on the basis of a medical report of a
specialist that undermined the reports of the VA's examiners.
*See Valentine*, 574 F.3d at 695 (A "properly justified

PAGE 15 - OPINION AND ORDER

reevaluation of old evidence constitutes a persuasive, specific, and valid reason" for according less weight to a VA disability determination.).

On this record, the Court finds the ALJ provided specific, persuasive, and valid reasons based on the record for discounting the VA's 2003 disability rating.

## II.  Plaintiff's Credibility

Plaintiff asserts generally that the ALJ failed to provide clear and convincing reasons for discrediting his credibility.

The Ninth Circuit has established a two-part test in evaluating a claimant's subjective symptom testimony.  The claimant must (1) produce objective medical evidence of one or more impairments and (2) show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  *Smolen v. Chater*, 80 F.3d 1273, 1281–82 (9th Cir. 1996).

The ALJ is responsible for evaluating the credibility of the claimant's testimony.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)(citations omitted).  In assessing a claimant's credibility, the ALJ may rely on (1) ordinary techniques of credibility evaluation such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) an unexplained or inadequately explained failure to seek

treatment or to follow a prescribed course of treatment; and
(3) the claimant's daily activities. *Smolen,* 80 F.3d at 1284
(citations omitted). If there is not any affirmative evidence of
malingering, the ALJ must provide "clear and convincing" reasons
for rejecting the claimant's testimony regarding the severity of
her symptoms. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.
1993).

Here Plaintiff provided objective medical evidence of an
impairment, and the ALJ did not identify any affirmative evidence
of malingering. The ALJ, therefore, was required to provide
"specific, cogent reasons for the disbelief" and "identify what
testimony is not credible and what evidence undermines the
claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th
Cir. 1995)(citations omitted). The ALJ, however, was not
required to credit automatically or to believe every allegation
of disabling pain. *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir.
1989). Such a rule would essentially make disability benefits
available on demand. *Id*. When the ALJ makes specific findings
justifying a decision to disbelieve an allegation and those
findings are supported by substantial evidence in the record, the
court may not second-guess that decision. *Fair*, 885 F.2d at 603.

In evaluating Plaintiff's credibility, the ALJ found
Plaintiff's complaints were inconsistent with the objective
medical evidence and the record as a whole. Tr. 27-32. Although

PAGE 17 - OPINION AND ORDER

the ALJ's credibility determination may not be based solely on the lack of objective medical evidence, the ALJ may disbelieve a claimant's testimony when the claimant submits medical evidence of an underlying impairment but testifies that he or she experiences limitations at a higher level. *Tonapetyan v. Halter*, 242 F.3d 1144, 1147-48 (9th Cir. 2001). *See also Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985).

Here the ALJ concluded even though Plaintiff's cardiac and sleep apnea impairments could be expected to produce some of the alleged symptoms, those disorders were "no more than modest in their impact." Tr. 28-29. The ALJ noted on August 7, 1998, Plaintiff told Dr. Personius that he did not have any cardiac complications from medications and that he walked three miles every other day. Tr. 28, 251. At a VA examination on July 26, 1999, Plaintiff did not have any acute complaints. Tr. 28, 232. Moreover, a January 28, 2000, echocardiogram did not reveal any evidence of abnormal aortic or mitral valve function. Tr. 28, 243. On February 25, 2000, Plaintiff reported he started a new job as an electrician, but he was not using his cardiac medications because they made him tired. Tr. 29, 220-21. On January 5, 2001, Plaintiff complained about not having any energy and only being able to walk for 15-20 minutes, but Dr. Personius did not note any evidence of cardiac dysfunction. Tr. 29, 264-65.

On January 19, 2001, Plaintiff was able to obtain 90%

PAGE 18 - OPINION AND ORDER

expected heart rate during a treadmill stress test, and
Dr. Personius noted Plaintiff's exercise capacity was "average."
Tr. 29, 262.  On January 29, 2001, Plaintiff had isolated atrial
contractions, but Dr. Personius concluded a change in medication
could suppress palpitations.  Tr. 29, 298.  On July 2, 2002,
Plaintiff did not report any complaints and noted he had started
a part-time job.  Tr. 29,606.  On January 13, 2003, Plaintiff
complained his heart rate had become more irregular.  Although
Holter Monitor Recording confirmed an irregular heart beat,
Dr. Personius concluded medication could successfully treat the
"benign" dysrhythmias.  Tr. 29, 458.  Craig Broberg, M.D., found
Plaintiff's February 6, 2003, echocardiogram did not show any
evidence of abnormal aortic or mitral valve functioning.
Tr. 29, 455.  Plaintiff later told Dr. Broberg that he was
feeling much better after stopping his cardiac medications.
Tr. 30, 573.  Chest x-rays taken in August 2004 did not reveal
any evidence of acute cardiopulmonary disease.  Tr. 30, 648.
After his date last insured in June 2006, Plaintiff reported
doing well without arrhythmia until a July 2006 episode of atrial
flutter.  An echocardiogram, however, revealed a regular heart
beat.  Tr. 30, 712.  In August 2006 an examining VA physician,
Neal Thompson, M.D., found Plaintiff was doing quite well.  Tr.
711.  Also in August 2006 examining cardiologist, Ulrich Luft,
M.D., found that Plaintiff was doing relatively well with no
evidence of significant vulvular dysfunction.  Tr. 30, 717.  In

PAGE 19 - OPINION AND ORDER

September 2006 another examining cardiologist, George Giraud, M.D., noted Plaintiff had done exceptionally well over the last year without any cardiac symptoms and had an excellent exercise tolerance. Tr. 30, 703. On September 19, 2006, Plaintiff reported "no complaints, I am able to do everything I want to." Tr. 30, 702. The ALJ concluded the record showed Plaintiff's primary impairment, Marfan's Syndrome, had been controlled by medication and corrective surgery. Based on all of this evidence, the ALJ found the objective evidence in the record undermined Plaintiff's alleged limitations. Tr. 30.

Additionally, the ALJ discounted Plaintiff's credibility based on inconsistent statements and activities of daily living. Tr. 30-31. As discussed, the ALJ noted Plaintiff told Dr. Gerber that he last worked in 1997 when, in fact, he engaged in significant work through 2001. Tr. 30, 56, 449. The ALJ also noted even though Plaintiff asserted he was unable to work, he admitted that he regularly performs household chores, cleans in the yard, cares for dependents, participates in community events, and travels to the Phillippines. Tr. 31-32, 654, 764, 871. The ALJ also noted Plaintiff's tendency to exaggerate symptoms. In October 2001 Plaintiff told a VA examiner that he was experiencing pain at a level of 8 out of 10, but he was actually smiling at the time and did not appear to be in acute distress. Tr. 31, 411-12.

Finally, the ALJ discounted Plaintiff's testimony based on

PAGE 20 - OPINION AND ORDER

his long history of noncompliance with prescribed courses of treatment and his failure to take cardiac medications.  Tr. 31. The Court is not persuaded by Plaintiff's argument that he was in a "medical 'Catch-22': either he takes his heart medication and suffers fatigue of very low heart rate; or, if he does not take his medication, he risks arrhythmias."  There is not any medical evidence, however, to support Plaintiff's assertion that he suffers from a very low heart rate.  Based on these inconsistencies, the ALJ found Plaintiff's subjective complaints of fatigue were not entirely credible.  Tr. 28-32.

On this record, the Court finds the ALJ did not err when he discounted Plaintiff's testimony because the ALJ provided clear and convincing reasons supported by substantial evidence in the record for doing so.

## III.  ALJ's Evaluation of the Medical Evidence

Plaintiff argues the ALJ improperly rejected or failed to consider the reports, opinions, and ultimate conclusions of Plaintiff's treating and examining physicians concerning the severity of Plaintiff's impairments without stating clear and convincing reasons for doing so.  The Court disagrees.

As noted, this Court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The Commissioner's decision must be upheld if

it is a rational interpretation of the evidence even if
"the evidence is susceptible to more than one rational
interpretation." *Andrews,* 53 F.3d at 1039-40.  The reviewing
court may not substitute its judgment for that of the
Commissioner.  *Robbins*, 466 F.3d at 882.

The ALJ need not accept the opinion of any physician,
including a treating physician, if that opinion is brief,
conclusory, and inadequately supported by clinical findings.
*Thomas v. Barnhart*, 278 F.3d 947 (9th Cir. 2002).  A physician's
opinion of disability "premised to a large extent upon the
claimant's own accounts of his symptoms and limitations may be
disregarded where those complaints have been properly
discounted." *Flaten v. Sec. of Health and Human Servs.*, 44 F.3d
1453, 1463-64 (9th Cir. 1995).

"Although a treating physician's opinion is generally
afforded the greatest weight in disability cases, it is not
binding on an ALJ with respect to the existence of an impairment
or the ultimate determination of disability." *Tonapetyan v.
Halter,* 242 F.3d 1144, 1148 (9th Cir. 2001).  "When there is a
conflict between the opinions of a treating physician and an
examining physician, as here, the ALJ may disregard the opinion
of the treating physician only if he sets forth 'specific and
legitimate reasons supported by substantial evidence in the
record for doing so.'" *Id*. (quoting *Lester v. Chater*, 81 F.3d
821, 830 (9th Cir. 1995)).  The ALJ is ultimately responsible for

PAGE 22 - OPINION AND ORDER

determining credibility, resolving conflicts in the medical testimony, and resolving ambiguities in the record. *Andrews*, 53 F.3d at 1039.

As noted, Dr. Personius administered a treadmill stress test in January 2001, one month before Plaintiff's alleged onset date, in which Plaintiff demonstrated "average exercise ability." Tr. 27, 29, 547. Although Plaintiff emphasizes the test had to be discontinued due to his leg fatigue and shortness of breath, Dr. Personius specifically found there was a low likelihood of hemodynamically significant coronary artery disease, there was not any evidence of ischemia, there was not any evidence of exercise-induced asthma, and Plaintiff's exercise capacity was preserved. Tr. 27, 29, 537. Thus, the ALJ properly cited this evidence to support his conclusion that Plaintiff's heart condition was not so severe as to preclude performing work.

Plaintiff also cites a January 5, 2001, treatment record in which Dr. Personius described Plaintiff's hypertension as "inadequately controlled." Tr. 264. The ALJ noted, however, that Plaintiff acknowledged not taking his prescribed hypertension medication throughout this period. Tr. 31, 379, 573, 587. The ALJ does not need to make detailed findings about the nature and extent of impairments or limitations that are "largely a result of noncompliance with . . . prescribed therapy." *Lewis*, 236 F.3d at 513.

As noted, the ALJ also discussed the opinions of Drs. Prins

PAGE 23 - OPINION AND ORDER

and Gerber and provided clear and convincing reasons for discounting their opinions. Tr. 26-27. The ALJ gave little weight to the opinions of Drs. Prins and Gerber because they were based on Plaintiff's inaccurate self-reports regarding his recent employment history and his alleged inability to walk more than 150 feet or uphill. Tr. 27, 447. The ALJ may reject a physician's opinion when it is predicated on reports by a claimant who is found to be not credible. *Bray,* 554 F.3d at 1228. *See also Tommasetti*, 533 F.3d at 1041; *Flaten*, 44 F.3d at 1463-64 (9th Cir. 1995)(A physician's opinion of disability "premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted.").

Plaintiff argues the ALJ failed to properly consider Dr. Personius's reports regarding a January 2001 "King of Hearts" test and a January 2003 "Holter Monitor Recording," both of which showed abnormal results and atrial flutters. Tr. 298, 458. Plaintiff also argues the ALJ failed to consider properly and to credit the reports of Craig Broberg, M.D., and George Giruad, M.D., who conducted echocardiograms that indicated atrial fibrillation and supported Plaintiff's disability claims related to his cardiac condition. Tr. 584-85.

As an initial matter, the ALJ specifically considered and evaluated each of the identified test results. Tr. 29-30. With respect to the January 2001 test, the ALJ noted Dr. Personius

stated he would change Plaintiff's medication to include a
calcium blocker to suppress palpitations.  Tr. 29, 298.  The ALJ
also noted Dr. Personius's statement that the January 2001
treadmill test did not reveal any objective evidence of cardiac
dysfunction.  Tr. 30, 537.  With respect to the January 2003
Holter Monitor Recording, the ALJ noted Dr. Personius described
the dysrhythmias as "benign" and stated they could be controlled
with a prescription for beta-blocker medication.  Tr. 30, 458.
The ALJ also noted evidence that indicated Plaintiff's cardiac
condition had been controlled by medication and that Plaintiff
did not complain again about arrhythmias until after his last
date insured.  Tr. 30, 711.  The ALJ found even though
Dr. Broberg stated a February 2003 echocardiogram revealed "mild
left ventricular enlargement and mild left ventricular systolic
dysfunction," there was not any evidence of abnormal aortic and
mitral valve function.  Tr. 29, 454-55.  Finally, the ALJ pointed
out that both Drs. Broberg and Giruad concluded Plaintiff's
cardiac condition could be controlled with medication.  Tr. 30.
The ALJ adequately considered the evidence relating to
Plaintiff's irregular heartbeats, and the ALJ's conclusion that
Plaintiff's cardiac condition could be controlled by medication
is supported by substantial evidence in the record.

The Court also disagrees with Plaintiff's interpretation of
the treatment notes of Andre Barkuizen, M.D., examining

rheumatology specialist at the VA hospital.  Although
Dr. Barkhuizen reported Plaintiff's complaint of chronic fatigue,
Dr. Barkhuizen could not identify any underlying cause for the
complaint.  Tr. 29, 599-600.  As noted, the ALJ found Plaintiff's
self-reports of fatigue to be unreliable and contradicted by the
medical evidence.  Tr. 28-32.  Plaintiff does not provide any
compelling basis for disturbing that finding.

The ALJ also properly evaluated Plaintiff's claims of back
pain.  Tr. 25.  The ALJ noted Yung Kho, M.D., a neurologist,
performed examinations in January 2003 and February 2003.
Dr. Kho found Plaintiff's back was "asymptomatic."  Tr. 25, 444.
His finding was supported by a "negative MRI" of Plaintiff's back
and the fact that Plaintiff sought little treatment for this
allegedly disabling condition.  Tr. 25, 441.  The Court is not
persuaded by Plaintiff's argument that Dr. Kho's opinion is of
"limited" value because he examined Plaintiff "from a
neurological standpoint."  In fact, the Court notes the record
reflects "Chronic Pain Treatment" is one of Dr. Kho's
specialties.  Tr. 441, 619.  Accordingly, the Court finds the ALJ
properly relied on Dr. Kho's opinion that Plaintiff could perform
work at the light exertion level despite some back pain.  Tr. 25-
26, 619.

On this record, the Court concludes the ALJ properly

evaluated the medical evidence.  The ALJ engaged in a thorough discussion and analysis of the objective medical evidence, resolved inconsistencies in the record as a whole, and set forth rational conclusions supported by the record as a whole. Consequently, the ALJ's decision must be upheld even if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40.

In summary, the Court concludes after careful consideration of the record that the ALJ did not err in his evaluation of the medical evidence, and Plaintiff's alternative interpretation of the medical record does not provide a basis for disturbing the ALJ's decision.  *See Burch*, 400 F.3d at 679 (even if the evidence could result in "more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.").

## IV. Plaintiff's Physical Impairments in Combination

Plaintiff appears to argue that the ALJ failed to consider the combined effect of Plaintiff's physical impairments on his RFC.  Plaintiff contends the ALJ failed to recognize the results of Dr. Personius's January 2003 "Holter Monitor Recording" called for a "specific equivalency determination" with respect to

Listing 4.05, Recurrent Arrhythmias.[2]

At Step Three of the sequential analysis, the ALJ must determine whether the claimant's impairments meet or equal any of the listed impairments considered so severe as to automatically constitute disability. 20 C.F.R. §§ 404.1594(c)(3), 404.1520(d). *See also Tackett*, 180 F.3d at 1098. "If a claimant has more than one impairment, the ALJ must determine 'whether the combination of [the] impairments is medically equal to any listed impairment.'" *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001)(quoting 20 C.F.R. § 404.1526(a)). The ALJ is not required, however, to discuss the "combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch*, 400 F.3d at 683. In other words, it is the plaintiff's burden to offer a theory as to how his impairments combine to equal the criteria for listed impairments. *Burch*, 400 F.3d at 683. A finding of equivalence

---

[2]Listing 4.05 provides:

Recurrent Arrhythmias, not related to reversible causes, such as electrolyte abnormalities or digitalis glycoside or antiarrhythmic drug toxicity, resulting in uncontrolled, recurrent episodes of cardiac syncope or near syncope, despite prescribed treatment, and documented by resting or ambulatory (Holter) electrocardiography, or by other appropriate medically acceptable testing, coincident with the occurrence of syncope or near syncope.

20 C.F.R. pt 404, subpt. P, app. 1 (internal citations omitted).

must be based on medical evidence rather than a generalized assertion of functional problems. *Tackett*, 180 F.3d at 1100.

Here Plaintiff failed to establish equivalence. The ALJ thoroughly discussed the medical evidence and Plaintiff's impairments. Tr. 24-32. Plaintiff does not point to any evidence that shows some combination of impairments meets or equals the listing criteria for recurrent arrhythmias. Because Plaintiff failed to offer a plausible theory as to how his combined impairments are medically equivalent to the listing criteria for a listed impairment, the ALJ was not required to engage in an extensive discussion of equivalency. *See Lewis*, 236 F.3d at 514.

In addition, the Holter Monitoring Recording conducted by Dr. Personius did not require the ALJ to engage in a more thorough equivalency analysis. Listing 4.05 requires "recurrent episodes . . . *despite prescribed treatment*." 20 C.F.R. pt. 404, subpt. P, app. 1 (emphasis added). Here the ALJ discussed Plaintiff's Holter Monitor Recording and specifically noted Dr. Personius's statement "that medications could suppress such symptoms and classified [Plaintiff's erratic heartbeat] as benign." Tr. 30, 458. Thus, the ALJ specifically noted Dr. Personius's opinion that Plaintiff's irregular heartbeats could be controlled with appropriate medication, and, therefore, as noted, the ALJ was not required to engage in a lengthy equivalency discussion with respect to Listing 4.05.

**V. Adequacy of ALJ's Hypothetical**

At Step Four of the sequential evaluation process, the ALJ
relied on the testimony of the VE when he concluded Plaintiff is
capable of performing past relevant work as a wire harness
assembler as he actually performed that job and as it is
generally performed.  Tr. 32.  The ALJ also found Plaintiff is
capable of performing past relevant work as a flight line
mechanic as actually performed.  Tr. 32-33.  Plaintiff contends
the ALJ failed to include Plaintiff's limitations in the
hypothetical to the VE because the ALJ improperly discounted
Plaintiff's testimony and the medical evidence.

An ALJ's hypothetical to a VE must set out all of the
claimant's impairments and limitations.  *Andrews v. Shalala*, 53
F.3d 1035, 1043 (9th Cir. 1995).  *See also Gallant v. Heckle*, 753
F.2d 1450, 1456 (9th Cir. 1984).  The hypothetical posed to the
VE, however, only has to include those limitations supported by
substantial evidence in the record.  *Robbins v. Soc. Sec. Admin*,
466 F.3d 883, 886 (9th Cir. 2006).  If the assumptions in the
hypothetical are not supported by the record, a VE's opinion that
a claimant can work does not have evidentiary value.  *Gallant*,
753 F.3d at 1456.

In arguing that the ALJ's hypothetical was incomplete,
Plaintiff merely restates his contentions that the ALJ improperly
discounted Plaintiff's alleged limitations and the medical
reports of Drs. Prins and Gerber.  The Court, however, has

PAGE 30 - OPINION AND ORDER

already found the ALJ provided legally sufficient reasons
supported by substantial evidence in the record for rejecting the
VA's total disability determination, for discounting the medical
reports of the VA's disability evaluators, and for discounting
Plaintiff's testimony.  A plaintiff cannot establish an ALJ's
hypothetical was incomplete merely by restating arguments that
the ALJ improperly discounted certain evidence when substantial
evidence in the record supports the ALJ's rejection of that
evidence. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76
(9th Cir. 2008).

The Court, therefore, concludes on this record that the ALJ
did not err when he excluded from the hypothetical the
discredited opinions of Drs. Prins and Gerbers, which were, in
turn, based on Plaintiff's discredited self-reported limitations.
Accordingly, the Court finds the ALJ did not err when he relied
on the testimony of the VE and concluded Plaintiff was capable of
performing past relevant work.

**VI.  The Appeals Council's Remand Order**

Finally, Plaintiff argues the ALJ erred by failing to
comply fully with the Appeals Council's November 3, 2006, Remand
Order.  Specifically, Plaintiff contends the ALJ failed to follow
the Appeals Council's Order to perform a function-by-function
assessment of Plaintiff's ability to sit, stand, walk, lift,
carry, push, and pull and to provide specific references to
evidence to support those findings.  Rather than following the

PAGE 31 - OPINION AND ORDER

Appeals Council's directive, Plaintiff argues the ALJ improperly
conducted a *de novo* review of the evidence.

When the Appeals Council remands a decision to the ALJ, the
ALJ "shall take any action that is ordered by the Appeals Council
and may take any additional action that is not inconsistent with
the Appeals Council's remand order." 20 C.F.R. § 404.977(b).
This Court's review, however, is limited to the final decision of
the Commissioner rather than prior decisions and orders that may
have gone into the creation of that final decision. 42 U.S.C.
§ 405(g). *See also Mackey v. Shalala*, 47 F.3d 951, 953 (8th Cir.
1994)(court does not have jurisdiction to review Appeals
Council's denial of review because "it is a nonfinal agency
action."). When the Appeals Council denied Plaintiff's request
for review, the ALJ's August 31, 2007, decision became the
Commissioner's final decision. Tr. 8-11. *See also* 20 C.F.R.
§§ 404.981; *Russell v. Bowen*, 856 F.2d 81, 83-84 (9th Cir. 1988).
Whether that decision is supported by substantial evidence in the
record and based on the correct legal standards is the only issue
before the Court. *See* 42 U.S.C. § 405(g). *See also Morgan v.
Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).
Indeed, Plaintiff neither cites nor is the Court aware of any
authority to support the conclusion that this Court may review an
ALJ's decision for compliance with the specifics of an Appeals
Council's remand order.

Even if the Commissioner's final decision was reviewable for

PAGE 32 - OPINION AND ORDER

compliance with the Appeals Council remand order, the Court finds the ALJ did not take action inconsistent with that order. *See* 20 C.F.R. § 404.977(b). In this case, the Appeals Council vacated the prior ALJ decision and ordered the ALJ to "offer [Plaintiff] an opportunity for a hearing, take any further action needed to complete the administrative record and *issue a new decision.*" Tr. 809 (emphasis added). The ALJ, therefore, was required to issue a *de novo* decision sufficient to withstand judicial review. Moreover, the fact that the Appeals Council denied Plaintiff's request for review indicates it did not find the ALJ's August 31, 2007, decision contained any abuse of discretion, error of law, or contravened the Appeals Council's remand order. *See* 20 C.F.R. § 404.970(a). Accordingly, the ALJ properly conducted a new review of the evidence and issued a new decision.

On this record, the Court concludes the ALJ did not take action inconsistent with the Appeals Council's remand order.


## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this _23rd_ day of August, 2010.


_/s/ Anna J. Brown_
ANNA J. BROWN
United States District Judge

PAGE 33 – OPINION AND ORDER